# IN THE SUPREME COURT OF TEXAS

═══════════════
No. 13-1026
═══════════════

ROYSTON, RAYZOR, VICKERY, & WILLIAMS, LLP, PETITIONER,

v.

FRANCISCO "FRANK" LOPEZ, RESPONDENT

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

*-consolidated with-*

═══════════════
No. 14-0109
═══════════════

IN RE ROYSTON, RAYZOR, VICKERY, & WILLIAMS, LLP, RELATOR

═══════════════════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════════════════

**Argued March 26, 2015**

JUSTICE JOHNSON delivered the opinion of the Court.

JUSTICE GUZMAN filed a concurring opinion, in which JUSTICE LEHRMANN and JUSTICE DEVINE joined.

This interlocutory appeal involves the enforceability of an arbitration provision in an attorney-client employment contract. The provision specifies that the client and firm will arbitrate

disputes that arise between them, except for claims made by the firm for recovery of its fees and expenses. After the underlying matter was settled, the client sued the firm. The trial court denied the firm's motion to order the dispute to arbitration. On interlocutory appeal, the court of appeals affirmed on the basis that the arbitration provision is substantively unconscionable and unenforceable.

We conclude that the client did not prove that either the arbitration provision is substantively unconscionable or any other defense to the arbitration provision applies. Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court.

## I. Background

Francisco Lopez hired Royston, Rayzor, Vickery, & Williams, LLP to represent him in a suit for divorce from his alleged common-law wife who won $11 million in the lottery. The two-page employment contract between Lopez and Royston, Rayzor contained the following arbitration provision:

> While we would hope that no dispute would ever arise out of our representation or this Employment Contract, you and the firm agree that any disputes arising out of or connected with this agreement (including, but not limited to the services performed by any attorney under this agreement) shall be submitted to binding arbitration in Nueces County, Texas, in accordance with appropriate statutes of the State of Texas and the Commercial Arbitration Rules of the American Arbitration Association (except, however, that this does not apply to any claims made by the firm for the recovery of its fees and expenses).

Royston, Rayzor then filed suit for divorce on Lopez's behalf, the trial court ordered the parties in the divorce suit to mediation, and they settled. Lopez later sued Royston, Rayzor, claiming the firm induced him to accept an inadequate settlement. The firm moved to compel arbitration under both

2

the Texas Arbitration Act (Arbitration Act), and common law.  *See* TEX. CIV. PRAC. & REM. CODE §§ 171.001–.098; *see also L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351 (Tex. 1977) (noting that arbitration in Texas can be pursuant to statute or common law).  The trial court held a hearing on the firm's motion and denied it.  The only evidence introduced at the hearing was the employment contract.

Royston, Rayzor filed both an interlocutory appeal challenging the denial under the Arbitration Act, and an original proceeding seeking mandamus relief under common law.  *Royston, Rayzor, Vickery & Williams, L.L.P. v. Lopez*, 443 S.W.3d 196 (Tex. App.—Corpus Christi 2013).  The court of appeals affirmed the trial court's refusal to order arbitration under the Arbitration Act and denied mandamus relief.  *Id.* at 209.  The appeals court noted that Lopez did not challenge the existence of the arbitration provision or whether he agreed to it as part of his contract with Royston, Rayzor.  *Id.* at 202.  The court concluded that Lopez's claims were within the scope of the arbitration agreement and then moved on to Lopez's "several affirmative defenses to arbitration."  *Id.* at 202-03.  It first considered his assertion that the arbitration provision is substantively unconscionable because it viewed that issue as determinative.  *Id.* at 203.

As an initial part of its analysis, the appeals court considered whether Lopez was required to show that the arbitration provision was both procedurally and substantively unconscionable.  *Id.* at 203-04.  It concluded that he needed to show only one or the other.  *Id.* at 204.  The court then concluded that the provision was so one-sided it was substantively unconscionable and unenforceable.  *Id.* at 206.

3

In cause number 13-1026, Royston, Rayzor seeks relief from the court of appeals' judgment denying its interlocutory appeal, and in cause number 14-0109, it seeks mandamus relief directing the trial court to order arbitration. In 13-1026, the firm challenges the two determinations on which the court of appeals affirmed the trial court's order. It also urges that we consider Lopez's remaining defenses to arbitration even though the court of appeals did not reach them, hold that they are also invalid, reverse the court of appeals' judgment, and remand to the trial court with instructions that it order the case to arbitration.

Lopez responds by urging that we affirm the lower courts' decisions for several reasons: (1) the court of appeals correctly determined that an arbitration provision need not be both procedurally and substantively unconscionable to be unenforceable, and this provision is substantively unconscionable because it is excessively one-sided; (2) the arbitration provision was entered into in the context of Lopez's agreeing to become a client of the law firm, and given that context it violates public policy; (3) Lopez's status as a prospective client shifted the burden of proof to Royston, Rayzor to establish it met its ethical obligation to explain the effects of the arbitration provision to him and Royston, Rayzor did not do so; and (4) the arbitration provision is illusory because it allows Royston, Rayzor to avoid arbitration as to its fee disputes while requiring Lopez to arbitrate all his disputes.

## II. Standard of Review

Arbitration agreements can be enforced under either statutory provisions or the common law. *L.H. Lacy Co.*, 559 S.W.2d at 351. Under provisions of the Arbitration Act, a trial court's ruling on a motion to compel arbitration may be challenged by interlocutory appeal. TEX. CIV. PRAC. & REM.

4

CODE § 171.098. Under common law standards, the trial court's ruling on such a motion may be challenged by means of an original proceeding seeking mandamus relief. *See L.H. Lacy Co.*, 559 S.W.2d at 351. The ultimate issue of whether an arbitration agreement is against public policy or unconscionable is a question of law for the court. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 349 (Tex. 2008); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). When public policy or unconscionability is the basis for denying a motion to compel arbitration and there are no factual disputes, the standard of review on appeal is de novo. *See J.M. Davidson*, 128 S.W.3d at 229.

## III. Analysis

We first address the unconscionability issue which was the basis for the court of appeals' decision. Because we reverse on that issue and resolve the appeal by means of Royston, Rayzor's interlocutory appeal under the Arbitration Act, we do not address the firm's petition for writ of mandamus. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (explaining that mandamus is a discretionary remedy that issues only to correct a clear abuse of discretion where no other adequate remedy by law exists). However, in the interest of judicial economy we also consider Royston, Rayzor's other potentially dispositive issues instead of remanding them to the court of appeals. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 97 (Tex. 2012).

### A. Unconscionability

Arbitration agreements may be either substantively or procedurally unconscionable, or both. *See In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002) ("[C]ourts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision."). "Substantive unconscionability refers to the fairness of the arbitration provision itself,

whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006). Arbitration is strongly favored. *J.M. Davidson*, 128 S.W.3d at 227. So, once it is established that a valid arbitration agreement exists and that the claims in question are within the scope of the agreement, a presumption arises in favor of arbitrating those claims and the party opposing arbitration has the burden to prove a defense to arbitration. *Id.* The same principles apply to arbitration agreements between attorneys and clients. *See In re Pham*, 314 S.W.3d 520, 526-28 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding [mand. denied]); *Henry v. Gonzalez*, 18 S.W.3d 684, 691 (Tex. App.—San Antonio 2000, pet. dism'd).

As noted previously, the court of appeals agreed with Lopez's argument that the agreement was substantively unconscionable. 443 S.W.3d at 209. In responding to the dissent, the court summarized and restated its conclusions as to unconscionability. *Id.* First, it reiterated that "arbitration clauses in attorney-client employment contracts are not presumptively unconscionable." *Id.* We agree with that statement. *See* TEX. CIV. PRAC. & REM. CODE § 171.001 (providing that a written arbitration agreement is valid and enforceable and may be revoked only upon a ground that exists in law or equity for revocation of a contract). The prospective attorney-client relationship adds an overlay to attorney-client employment contracts, *see Hoover Slovacek, L.L.P. v. Walton*, 206 S.W.3d 557, 560-61 (Tex. 2006), but that overlay does not alter the basic principle that arbitration clauses in agreements are enforceable absent proof of a defense. Nor does it negate the principle that absent fraud, misrepresentation, or deceit, one who signs a contract is deemed to know and understand its contents and is bound by its terms. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex.

6

2007); *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (holding that absent fraud, misrepresentation, or deceit, parties are bound by terms of the contract they signed, regardless of whether they read it or thought it had different terms); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (holding that a party who has the opportunity to read an arbitration agreement and signs it is charged with knowing its contents).

Next, the court of appeals stated that Lopez did not have an evidentiary burden with respect to his contention that the arbitration provision was unconscionable. 443 S.W.3d at 209. We disagree. As our previous opinions have made clear, parties asserting defenses to arbitration clauses have the burden to prove the defenses—including unconscionability:

> [U]nder Texas law, as with any other contract, agreements to arbitrate are valid unless grounds exist at law or in equity for revocation of the agreement. The burden of proving such a ground—such as fraud, unconscionability or voidness under public policy—falls on the party opposing the contract.

*In re Poly-Am.*, 262 S.W.3d at 348 (internal citations omitted). In any event, Lopez relied on evidence—albeit a limited amount. Royston, Rayzor introduced the employment contract in support of its motion to compel arbitration. As we note more fully below, although Lopez did not offer any other evidence, he specifically relied on the language of the arbitration provision and the contract to support his defenses.

Third, the appeals court specified three reasons on which it based its "one-sidedness" conclusion: (1) the contract gave Royston, Rayzor the right to withdraw as counsel at any time for any reason; (2) the arbitration provision facially favored Royston, Rayzor by giving it the right to litigate claims for its fees and expenses while compelling Lopez to arbitrate all his disputes; and

7

(3) the contract provided that regardless of the outcome of the claims in the underlying divorce action, Lopez would be solely responsible for all costs and expenses of that suit. 443 S.W.3d at 209. We address those reasons in turn, beginning with the first and third because they are based on provisions in the contract as opposed to provisions in the arbitration provision.

As the court of appeals noted, the attorney-client contract gave Royston, Rayzor the right to withdraw from representing Lopez at any time, for any reason, and it also required Lopez to pay costs and expenses of the divorce suit regardless of its outcome. But regardless of whether either or both of those provisions are so one-sided that the contract is unenforceable, a question we do not decide, they relate to the contract as a whole. And challenges relating to an entire contract will not invalidate an arbitration provision in the contract; rather, challenges to an arbitration provision in a contract must be directed specifically to that provision. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 647-48 (Tex. 2009); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (noting that the defenses of unconscionability, duress, fraudulent inducement, and revocation must specifically relate to the arbitration portion of a contract, not the contract as a whole, if they are to defeat arbitration).

Which leaves the second reason the court of appeals gave for its conclusion that the arbitration provision was so one-sided as to be unconscionable: the provision favored Royston, Rayzor by excepting from the provision the claims it made for fees and expenses while compelling Lopez to arbitrate all his disputes. But, as the court of appeals pointed out earlier in its opinion, an arbitration agreement is not so one-sided as to be unconscionable just because certain claims are excepted from those to be arbitrated. 443 S.W.3d at 205-06. That is, an arbitration agreement that

8

requires arbitration of one party's claims but does not require arbitration of the other party's claims is not so one-sided as to be unconscionable. *See In re FirstMerit Bank*, 52 S.W.3d at 757-58.

In support of the court of appeals' decision, Lopez argues that the language of the arbitration provision itself is evidence of its unconscionability. We disagree. In analyzing the provision for unconscionability, we begin with the rule that, as a party to the written agreement, Lopez is presumed to have knowledge of and understand its contents. *In re Bank One*, 216 S.W.3d at 826; *In re McKinney*, 167 S.W.3d at 835. Lopez's unconscionability claim is essentially that the provision is oppressive and grossly one-sided because it requires him to arbitrate all his claims against Royston, Rayzor, while allowing the firm to choose whether to litigate or arbitrate the only claim it realistically would have against him. However, Lopez misstates what the provision provides. The provision does no more than specify that claims of both parties arising from Royston, Rayzor's representation of Lopez must be resolved by arbitration, except for one category which is excluded from the provision. And as to claims in that category—any claims made by the firm for the recovery of its fees and expenses—the firm does not have a unilateral choice about arbitrating them. Rather, they are excluded from the arbitration provision and absent another agreement by which Lopez and the firm agree to arbitrate them, they are not subject to arbitration at the behest of either Lopez or the firm. The provision equally binds both parties to arbitrate claims within its scope and ensures that the same rules will apply to both parties: Texas statutes and rules of the American Arbitration Association. And as noted above, providing that one or more specified disputes are excepted from an arbitration agreement simply does not make the agreement so one-sided as to be unconscionable. *See In re FirstMerit Bank*, 52 S.W.3d at 757.

9

Additionally, Lopez does not focus on whether the arbitration provision deprives him of a substantive right, but even if he seriously contended that it did, it does not. A substantive right is generally understood to be "[a] right that can be protected or enforced by law; a right of substance rather than form." BLACK'S LAW DICTIONARY 1349 (8th ed. 2004). The provision does not unduly burden Lopez's substantive rights merely because it requires some, but not all, claims between the parties to be arbitrated. Final and binding resolution of a dispute by arbitration is an accepted and adequate alternative to its resolution by a judge or jury.

And lastly, although Lopez counters Royston, Rayzor's contention that he offered no evidence of unconscionability, in part, by arguing that he did not need to present evidence because he was prevailing in the hearing on Royston, Rayzor's motion to compel arbitration, the record does not substantiate that position. The hearing transcript shows that after introducing the employment contract, Royston, Rayzor's counsel repeatedly argued that Lopez had the burden to prove a defense in order to avoid arbitration, and that he had not submitted any evidence to do so. The trial court questioned attorneys for both parties about the lack of evidence concerning whether Royston, Rayzor advised Lopez regarding the advantages and disadvantages of arbitration. Lopez's counsel did not intimate that evidence other than the contract existed or could be presented, and specified that Lopez was choosing to rely only on the language of the employment agreement and arbitration provision:

> [W]e did present evidence. The evidence is their contract . . . . We choose to rely on the language of their contract . . . . Our position [is] the language in their contract itself with regard to [the] arbitration provision specifically does not put [Lopez] on notice of that and so we are relying on that evidence, . . . then I believe the burden shifts back to them to have to disprove that.

10

In sum, although the provision was one-sided in the sense that it excepted any fee claims by Royston, Razor from its scope, excepting that one type of dispute does not make the agreement so grossly one-sided so as to be unconscionable. *See In re FirstMerit Bank*, 52 S.W.3d at 757. The fact that Lopez was a prospective client of the firm until he entered into the employment contract does not change the principle.

We agree with Royston, Rayzor that Lopez did not prove the arbitration provision is substantively unconscionable. But if he had, then we agree with the court of appeals that it would be unenforceable regardless of whether it is procedurally unconscionable. An arbitration agreement is unenforceable if it is procedurally unconscionable, substantively unconscionable, or both. *See In re Halliburton Co.*, 80 S.W.3d at 572.

We next consider Lopez's assertion that the arbitration provision is unenforceable because it violates public policy.

### B. Public Policy

Attorney-client arbitration agreements are the subject of ongoing debate. *See* Jean Fleming Powers, *Ethical Implications of Attorneys Requiring Clients to Submit Malpractice Claims to ADR*, 38 S. TEX. L. REV. 625 (1997); Robert J. Kraemer, *Attorney-Client Conundrum: The Use of Arbitration Agreements for Legal Malpractice in Texas*, 33 ST. MARY'S L.J. 909 (2002). The debate arises because of two competing policies: the policy of holding attorneys to the highest level of ethical conduct and the policy of encouraging and enforcing arbitration agreements. *See Hoover Slovacek*, 206 S.W.3d at 560-61 (noting that lawyers are held to the highest ethical standards); *J.M. Davidson*, 128 S.W.3d at 227 (discussing the strong presumption in favor of arbitration agreements).

In *Hoover Slovacek*, the court of appeals held that a fee provision in an attorney-client agreement was so one-sided as to be unconscionable. 206 S.W.3d at 560. We agreed that the fee provision was unconscionable and unenforceable, but because it violated public policy. *Id.* at 563. Lopez asserts that considerations similar to those we applied in *Hoover Slovacek* apply here and make the arbitration provision unenforceable. In support of that argument he references several cases for the proposition that an attorney-client agreement is unenforceable as against public policy if it violates a Disciplinary Rule.[1] Lopez also relies on Opinion 586 of the Professional Ethics Committee in support of his argument, focusing on the following language:

> The [Professional Ethics] Committee is of the opinion that [Rule 1.03(b)] applies when a lawyer asks a prospective client to agree to binding arbitration in an engagement agreement. In order to meet the requirements of Rule 1.03(b), the lawyer should explain the significant advantages and disadvantages of binding arbitration to the extent the lawyer reasonably believes is necessary for an informed decision by the client.

Tex. Comm. on Prof'l Ethics, Op. 586, 72 TEX. B.J. 128 (2009). In essence, Lopez argues that the standard in Disciplinary Rule 1.03(b), providing that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation," applies to prospective clients. He also argues that Royston, Rayzor had the burden to show that the explanations were made.

---

[1] *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 205 (Tex. 2002); *Cobb v. Stern, Miller & Higdon*, 305 S.W.3d 36, 41 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Cruse v. O'Quinn*, 273 S.W.3d 766, 771-76 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *Pickelner v. Adler*, 229 S.W.3d 516, 530 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Lemond v. Jamail*, 763 S.W.2d 910, 914 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225, 229-30 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.); *Fleming v. Campbell*, 537 S.W.2d 118, 119 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

Royston, Rayzor maintains that the Disciplinary Rules and Professional Ethics Committee opinions are advisory and do not impose legal duties. The firm further argues that even if the rule and opinion apply in whole or part so it had a duty to explain something to Lopez, it was Lopez who had the burden to prove that the explanations were not made. We agree with the firm.

The Disciplinary Rules are not binding as to substantive law regarding attorneys, although they inform that law. *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998). Opinions of the Professional Ethics Committee carry less weight than do the Disciplinary Rules as to legal obligations of attorneys, but they are nevertheless advisory as to those obligations. *See* Tex. Comm. on Prof'l Ethics, Op. 586, 72 TEX. B.J. 128, 129 (2009) ("It is beyond the authority of this Committee to address questions of substantive law relating to the validity of arbitration clauses in agreements between lawyers and their clients."). Without addressing or diminishing to any degree the ethical obligations of attorneys, we are mindful that the parties to an agreement determine its terms, and courts must respect those terms as "sacred," absent compelling reasons to do otherwise. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 95-96 (Tex. 2011) ("As a fundamental matter, Texas law recognizes and protects a broad freedom of contract. We have repeatedly said that 'if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice.'") (internal citations omitted).

It is by now axiomatic that legislative enactments generally establish public policy. *See, e.g.*, *id.*; *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 250 (Tex. 2002). We have explained that:

13

> Courts must exercise judicial restraint in deciding whether to hold arm's-length contracts void on public policy grounds: Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law.

*Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001), *superseded by statute*, Tex. Lab. Code § 406.033(e), *as recognized in Austin v. Kroger Tex., L.P.*, ___ S.W.3d ___, ___ n. 18 (Tex. 2015) (formatting altered and internal citation omitted). And as relates to arbitration, the Legislature has clearly and directly indicated its intent that arbitration agreements be treated the same as other contracts. *See* TEX. CIV. PRAC. & REM. CODE § 171.001. The principle is borne out by *Cobb v. Stern, Miller & Higdon*, the case Lopez first references to support his position. 305 S.W.3d at 41. There an attorney's contingent fee agreement was obtained by solicitation of a Louisiana resident in violation of Disciplinary Rules 5.03 and 7.03. *Id.* at 42-43. In holding that the contingent fee contract was voidable, the court of appeals relied on Texas Government Code § 82.065(b), which provided that "[a] contingent fee contract for legal services is voidable by the client if it is procured as a result of conduct violating the laws of this state *or the Disciplinary Rules of the State Bar of Texas* regarding barratry by attorneys or other persons." *Id.* at 42 (quoting Act of June 14, 1989, 71st Leg., R.S., ch. 866, § 3, sec. 82.065, 1989 Tex. Gen. Laws 3855, 3857 (amended 2011, 2013) (current version at TEX. GOV'T CODE § 82.065(b))) (emphasis added).

It is true that public policy is not solely established through legislative enactments and may be informed by the Disciplinary Rules. But where the Legislature has addressed a matter, as it has addressed the enforceability of arbitration provisions, we are constrained to defer to that expression

14

of policy. *See Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 499 (Tex. 2013). Accordingly, we decline to impose, as a matter of public policy, a legal requirement that attorneys explain to prospective clients, either orally or in writing, arbitration provisions in attorney-client employment agreements. Prospective clients who enter such contracts are legally protected to the same extent as other contracting parties from, for example, fraud, misrepresentation, or deceit in the contracting process. *See* TEX. CIV. PRAC. & REM. CODE § 171.001. But prospective clients who sign attorney-client employment contracts containing arbitration provisions are deemed to know and understand the contracts' content and are bound by their terms on the same basis as are other contracting parties. *See, e.g.*, *In re McKinney*, 167 S.W.3d at 835; *EZ Pawn*, 934 S.W.2d at 90.

Noting again that our decision is not intended to diminish or address any applicable ethical obligations of Royston, Rayzor, but rather is intended to address legal obligations between the parties, we conclude that the arbitration provision is not unenforceable on the basis that it violates public policy.

## C. Illusory

Last, we address Lopez's claim that the arbitration provision is illusory because it binds Lopez to arbitrate all his claims against Royston, Rayzor, while excluding the only possible claim the firm might ever realistically make against him. Royston, Rayzor responds that Lopez's position completely misses the mark as to what comprises an illusory agreement. The firm urges that Lopez's illusory defense fails because consideration exists for the provision and Royston, Rayzor cannot avoid its promise to arbitrate all claims within the scope of the arbitration provision by, for example, unilaterally amending or terminating the provision. We agree with Royston, Rayzor.

15

Promises are illusory and unenforceable if they lack bargained-for consideration because they fail to bind the promisor. *See In re 24R, Inc.*, 324 S.W.3d 564, 566-67 (Tex. 2010). According to the Restatement (Second) of Contracts:

> Words of promise which by their terms make performance entirely optional with the "promisor" do not constitute a promise. . . . [Because while] there might theoretically be a bargain to pay for the utterance of the words, . . . in practice it is performance which is bargained for. Where the apparent assurance of performance is illusory, it is not consideration for a return promise.

RESTATEMENT (SECOND) OF CONTRACTS § 77 cmt. a (1981) (internal citations omitted). The same applies in the arbitration agreement context. An arbitration agreement is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate. And an arbitration provision that is part of a larger underlying contract may be supported by the consideration supporting the underlying contract. *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) ("[W]hen an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration."). But such an arbitration provision remains illusory if the contract permits one party to legitimately avoid its promise to arbitrate, such as by unilaterally amending or terminating the arbitration provision and completely escaping arbitration. *See In re 24R*, 324 S.W.3d at 567; *J.M. Davidson*, 128 S.W.3d at 236. But the fact that the scope of an arbitration provision binds parties to arbitrate only certain disagreements does not make it illusory. *See In re FirstMerit Bank*, 52 S.W.3d at 757. Additionally, the mere fact that an arbitration clause is one-sided does not make it illusory. For instance, in *In re AdvancePCS Health, L.P.*, we held that an arbitration agreement was not illusory despite the fact that the clause was one-sided because it allowed AdvancePCS to unilaterally modify the clause with 30-days' notice. 172 S.W.3d at 607-08. We determined that the

16

clause obligated AdvancePCS to arbitrate claims falling within the 30-day window even if it modified the clause. *Id.*

The provision here binds both Royston, Rayzor and Lopez as to their claims other than those specifically excluded. It does not allow either party to unilaterally escape or modify the obligation to arbitrate covered claims. The mutually binding promises to arbitrate all disputes except the firm's claims for fees and expenses, as well as the underlying contract, provide sufficient consideration for the arbitration provision. Even as to the excluded claims, Royston, Rayzor cannot choose whether to arbitrate or litigate. As we explained above, those claims have to be litigated unless the firm and Lopez enter a new agreement to arbitrate them. Accordingly, the arbitration provision is not illusory.

## IV. Conclusion

Lopez did not prove a defense to arbitration. We reverse the judgment of the court of appeals in cause number 13-1026 and remand that cause to the trial court for further proceedings consistent with this opinion. The petition for writ of mandamus in cause number 14-0109 is denied.

_____
Phil Johnson
Justice

**OPINION DELIVERED:** June 26, 2015

17