In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00052-CV**
_____

**US MONEY RESERVE, INC., Appellant**

**V.**

**NATHAN ROMERO, ET AL, Appellees**

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-201,157**

**MEMORANDUM OPINION**

Appellant U.S. Money Reserve, Inc. ("USMR") brings this interlocutory appeal challenging the trial court's denial of its motion to compel arbitration and granting Appellees Nathan Romero and Steve Williams's (collectively "Appellees" or "Plaintiffs") motion for temporary injunction. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(4) (West Supp. 2018) (authorizing interlocutory appeal from rulings granting or refusing temporary injunctions), 171.098(a)(1) (West 2011) (authorizing interlocutory appeals from rulings on motions to compel arbitration

1

subject to the Texas Arbitration Act). In two issues, Appellant argues that the trial court erred in denying its motion to compel arbitration and in granting Appellees' application for a temporary injunction. We reverse and remand.

Background

USMR is in the business of buying and selling precious metals, including coins, in the United States, Canada, and the United Kingdom. Romero and Williams are former employees of USMR whose employment was terminated in September 2017.

Original Petition and Application for Injunctive Relief

Plaintiffs Romero and Williams filed an Original Petition for Declaratory Judgment and Application for Temporary and Permanent Injunctions after their employment with USMR was terminated. According to the petition, while working for USMR, Plaintiffs signed a Confidential Services, Trade Secrets, and Employment Agreement ("Employment Agreement") that contained noncompetition and non-solicitation provisions and "generally prohibit[] Plaintiffs from engaging in the business of selling gold or gold coins anywhere in the United States, Canada, and the United Kingdom for a period of 2 years[]" and from working with other former employees of USMR for two years. Plaintiffs alleged in their petition that the noncompetition provision was overbroad and sought a declaratory

2

judgment declaring that the Employment Agreement was not enforceable to the extent that it prevents Plaintiffs from gaining employment in the industry or from working for or with former employees of USMR. The Plaintiffs also sought a temporary and permanent injunction against USMR "to enjoin USMR from interfering with Plaintiffs' employment in the gold coin and bullion industry." Plaintiffs alleged that they "will suffer probable, imminent, and irreparable harm if they are not allowed to engage in non-competitive employment in the gold coin and bullion industry while this action is pending."

Motion to Compel Arbitration

Defendant USMR filed an answer, asserting a general denial and an affirmative defense of arbitration. USMR also filed a Motion to Compel Arbitration and Stay Proceedings. USMR argued that a valid, enforceable arbitration agreement between the parties exists and that Plaintiffs' claims fall within the scope of that agreement. USMR requested that the trial court order arbitration and stay the proceedings pending the outcome of arbitration.

USMR included copies of the executed Employment Agreements as exhibits to the motion to compel. The Employment Agreements included a paragraph entitled "Unauthorized Competition":

> The Employee expressly agrees that the Employee shall not, for a period of two (2) years after termination of the Association or

3

employment between Employer and Employee, without prior written consent of the Employer, directly or indirectly through any corporation, organization or entity owned or controlled by the Employee, or as principal, agent, joint venture, employee, employer, consultant, partner, stock holder or holder of any equity or security (except less than l% of any which is commonly publicly traded in recognized markets), in any other individual, representative or corporate capacity whatsoever[.]

In addition, the Employment Agreements included a "Non-Solicitation[]" section:

Employee further acknowledges that a key asset of the Employer is its relationships with its staff, employees, consultants, agents and representatives and that solicitation by a party of such staff, employees, consultants, agents and representatives would cause serious and irreparable harm to the Employer. Accordingly, Employee covenants and agrees that he/she shall not, for a period of two (2) years immediately following the date Employee ceases to be an Employee for whatever reason, either himself/herself or for any other person or entity, directly or indirectly, in any capacity whatsoever, either attempt to or actually employ, hire, call on, solicit, divert or take away any employee, consultant, agent or representative of Employer, or its successors in interests or assigns.

Employee acknowledges and agrees that, in the event such a solicitation at issue in this section is made to anyone, it will be considered a material breach of the term of this Agreement and that, in addition to the Employer sustaining actual and/or consequential damages, Employer will incur significant damages to its reputation and business in goodwill, the totality of which may be difficult to ascertain. Accordingly, in addition to any legal remedies for damages that Employer may have against Employee for any breach of this section, the Employer also has the right to obtain injunctive relief to prohibit or stop any breaches of this provision [].

And, the Employment Agreements also included a section entitled "Non-Appealable

Binding Arbitration":

4

Employer and Employee agree that any and all disputes, claims, demands, causes of action, controversies, and/or other matters in question arising out of or relating to this agreement, any of its provisions, the breach of this agreement, any employment dispute, and/or the relationship between Employer and Employee pursuant to this agreement, shall be resolved exclusively by binding, non-appealable arbitration. Employer and Employee agree that the arbitrator shall be Tony Malley, 2626 Calder Avenue, Suite 104, Beaumont, Texas 77702. In the event that Tony Malley is unable or unwilling to serve as arbitrator, Employer and Employee agree that the arbitrator shall be Langston Adams, 2931 Park Plaza Ln, Port Arthur, Texas 77642. In the event that Tony Malley and Langston Adams are unable or unwilling to serve as arbitrator, Employer and Employee agree that the arbitrator shall be Scott Browne, 2380 Eastex Freeway, Beaum[]ont, Texas 77703. Arbitration may be commenced by giving written notice of intent to arbitrate. Employer and Employee agree that the decision of the arbitrator shall be final in all respects and shall be non-appealable. Any person may have a court of competent jurisdiction enter into its record the findings of such arbitrator for all purposes including for the enforcement of such award. Employer and Employee agree that either party may seek injunctive relief in a court of competent jurisdiction to maintain the status quo pending arbitration. Furthermore, Employer and Employee agree that in the event that either party seeks injunctive relief for the purpose of maintaining the status quo that said action will not waive either party's right to arbitrate. The costs and expenses of the arbitration shall be borne equally by the parties.

The Employment Agreements also included severability language:

The invalidity or unenforceability of any particular provision of this Agreement shall not affect the validity and enforceability of any other provision hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

5

Response to Motion to Compel Arbitration

Plaintiffs responded to the motion to compel and argued that the arbitration provision was unconscionable because it included an uncapped fee-splitting arrangement that requires an employee to pay fifty percent of the costs and expenses of arbitration and because it provides for the choice of a single arbitrator selected by USMR. According to Plaintiffs, the agreement should be declared unenforceable for unconscionability.

Hearing

The trial court held a hearing on the motion to compel. The parties agreed that Romero and Williams had not violated the noncompete agreement at that time. Williams testified that he had no input into the Employment Agreement that he signed, and that he had no input in picking the arbitrators listed in the Employment Agreement. Williams testified that he did not see how it would be detrimental to USMR for him to work with current or former employees of USMR. Williams explained that he wanted to go work for another employer, Texas Bullion Exchange. According to Williams, he did not know how much it would cost to try this case in court or to arbitrate the case.

Romero testified that he had no input on the selection of arbitrators in the arbitration provision of the Employment Agreement. Romero also explained that he

6

did not know what the cost of arbitration was, but that he understood it was "very expensive[][,]" and he guessed it would cost around $10,000. Romero explained that he believed that arbitration would be more expensive than litigation, although he was unsure how much litigation would cost. Romero also testified that he wished to go to work for Texas Bullion Exchange.

Plaintiffs' counsel testified he was aware of arbitrations costing $5,000 or $10,000 and that arbitrators in the Beaumont area cost between $200 and $400 an hour. Counsel for USMR argued that Plaintiffs had not come forward with evidence on their challenge to the selection of arbitrators or the fee-splitting provision. USMR also argued that if the court determined the fee-splitting provision was unconscionable, the court could strike or sever that provision from the arbitration clause.

Trial Court's Orders

Following the hearing, the trial court signed an order denying the motion to compel arbitration. The trial court also signed an Order for Issuance of Temporary Injunction. In the order on the temporary injunction, the trial court found (1) that the non-competition provision was overly broad and not a reasonable restraint to protect USMR's business interest; (2) that the restrictions on the solicitation of USMR's current or former employees and the use of USMR confidential and proprietary

information were reasonable; and (3) that "the remaining terms of the non-competition agreement are unreasonable and unenforceable[]" and (4) that the Plaintiffs had not engaged in conduct in violation of the non-competition agreement. The trial court enjoined USMR from

1. Enforcing or threatening to enforce the non-competition agreement, unless it is determined that Plaintiffs are improperly using confidential or proprietary information of USMR, contacting or soliciting former customers or persons to whom Plaintiffs marketed while working at USMR; or if Plaintiffs solicit current employees of USMR.
2. Interfering in with [sic] the employment of Plaintiffs in the gold coin and gold bullion industry unless it is determined that Plaintiffs are using confidential or proprietary information of USMR, contacting or soliciting former customers or persons to whom Plaintiffs marketed while working at USMR; or Plaintiffs solicit current employees of USMR.

Motion to Compel Arbitration

In its first issue, USMR argues that the trial court erred in denying its motion to compel arbitration. According to USMR, Appellees failed to meet their burden to show the arbitration clause was unconscionable in that they failed to provide sufficient evidence of the costs of arbitration or of litigation and they failed to provide sufficient evidence about the inadequacy of the arbitral forum or the agreed-upon arbitrators. In addition, USMR argues that even if the provisions for fee-sharing or the selection of the arbitrator were unconscionable, those items can be severed from the remainder of the arbitration clause which should be enforced.

8

We review a trial court's decision on a motion to compel arbitration under a de novo standard. *Lexington Ins. Co. v. Exxon Mobil Corp.*, No. 09-16-00357-CV, 2017 Tex. App. LEXIS 3819, at *11 (Tex. App.—Beaumont Apr. 27, 2017, no pet.) (mem. op.) (citing *Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 884 (Tex. App.—Beaumont 2009, no pet.); *McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex. App.—Houston [14th Dist.] 2007, no pet.)); *see also In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) ("Whether an arbitration agreement is enforceable is subject to de novo review."). A party seeking to compel arbitration must show that (1) there is a valid, enforceable arbitration agreement and (2) the claims raised fall within that agreement's scope. *Sinclair Grp., Ltd. v. Haggblom*, 548 S.W.3d 40, 43 (Tex. App.—Beaumont 2018, no pet.); *Granite Re Inc. v. Jay Mills Contr. Inc.*, No. 02-14-00357-CV, 2015 Tex. App. LEXIS 4182, at *7 (Tex. App.—Fort Worth 2015, no. pet.) (mem. op.) (citing *In re Kellogg, Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)); *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001(a), 171.021 (West 2011). If the proponent of arbitration proves the existence of a valid agreement that covers the dispute, then the burden shifts to the resisting party to raise an affirmative defense to enforcing the agreement. *Royston, Rayzor, Vickery, &*

*Williams, LLP v. Lopez*, 467 S.W.3d 494, 499-500 (Tex. 2015); *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999).

Fee-Sharing Provision

The Texas Supreme Court has explained that fee-sharing arrangements within an arbitration agreement are not per se unconscionable. *In re Poly-America*, 262 S.W.3d at 356. To establish unconscionability of a fee-sharing provision, a complaining party must present some evidence that it will likely incur arbitration costs "in such an amount as to deter enforcement of statutory rights in the arbitral forum." *Id.* In determining whether the costs of arbitration are excessive, courts apply a case-by-case analysis and focus on factors such as: (1) the party's ability to pay the arbitration fees and costs; (2) the actual amount of the fees compared to the amount of the underlying claims; (3) the expected cost differential between arbitration and litigation; and (4) whether that cost differential is so substantial that it would deter a party from bringing a claim. *See In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 893-94 (Tex. 2010) (quoting *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001)). The most important factor is the comparison of the costs of litigation and of arbitration. *Id.* at 894-95;

*see also BBVA Compass Inv. Solutions, Inc. v. Brooks*, 456 S.W.3d 711, 724 (Tex. App.—Fort Worth, 2015, no pet.).

At the hearing, the following exchange occurred during cross-examination of Williams:

Q. Do you know how much it would cost to try this case in this court?

A. No.

Q. Do you know how much it would cost to arbitrate the case?

A. No.

Q. Do you know which one would be more expensive?

A. No.

Q. So, can you tell the Court that arbitration would be more expensive than litigating in this forum?

A. No.

Q. You have no idea. Fair?

A. Fair.

Romero testified as follows:

Q. Now, as we did with Mr. Williams, if you look down at the bottom it also says that you're going to equally share the cost of arbitration. Right?

A. Yes.

Q. Do you know what that entails?

11

A. I do not. I mean, as far as the -- from what I know they're very expensive.

USMR argues that the Plaintiffs had the burden to present evidence of the factors outlined in *Olshan* and that they wholly failed to meet their burden to show the respective costs of arbitration as compared to the cost of litigation, or to show that the respective differential is so substantial that it would deter a party from bringing a claim. Plaintiff Romero, testified that he believed arbitration would cost about $10,000 and that he believed that arbitration would be more expensive than litigation although he did not know what the cost of litigation would be. Additionally, Romero's attorney testified that the cost of a prior arbitration involving a USMR Contract had an initial retainer fee of $10,000.00. And, the Plaintiffs' attorney contended he testified at the hearing that the arbitration costs would be "in addition to the standard costs of a bench trial on the declaratory judgment."

In our review of the record, we conclude that the Appellees did not meet their burden to present specific evidence that would support a finding that the fee-sharing provision was unconscionable. *See Olshan*, 328 S.W.3d at 893-95. For evidence to be sufficient it must show that the plaintiffs are likely to be charged excessive arbitration fees. *Id.* at 895. The Plaintiffs bear the burden to show the likelihood of incurring excessive costs, yet neither plaintiff provided "any concrete idea" of the amount of their costs, and merely showing that others have incurred a certain amount

of arbitration costs in different disputes is insufficient and "falls well short" of specific evidence that these particular parties will be charged excessive fees. *Id.* at 897. There is a lack of legally sufficient evidence in the record on whether the cost of arbitration will be excessive or prevent Appellees from effectively pursuing their claims in arbitration. *See id.*; *Brooks*, 456 S.W.3d at 724.

Selection of Arbitrators

Appellees also argued at trial that the selection of the arbitrators in the arbitration clause was unconscionable because Appellees had no input into the selection process. Neither Romero nor Williams testified that any of the named arbitrators would not be impartial, and no evidence of partiality was submitted to the trial court. During direct examination of Williams at the hearing, the following exchange occurred:

> Q. And do you have any reason to believe that any of these arbitrators wouldn't be fair to you?
>
> A. I don't have any proof.
>
> Q. You don't know one way or the other?
>
> A. I don't know one way or the other.

The inquiry about whether an arbitration provision is substantively unconscionable is not satisfied by speculation but requires specific proof of the arbitral forum's inadequacy. *See Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222,

13

232 (Tex. 2014). We find no evidence in the record that any of the arbitrators designated in the Employment Agreement would be unfair or that the arbitral forum selected in the agreement was otherwise inadequate. *See id.*; *see also Bonded Builders Home Warranty Ass'n of Tex. v. Rockoff*, 509 S.W.3d 523, 536 (Tex. App.—El Paso 2016, no pet.) ("Other than speculation, in which we are precluded from engaging, we find no support for the contention that the procedure to appoint arbitrators is per se unconscionable."). We conclude that Appellees did not meet their burden to present evidence that the selection of arbitrators would render the arbitral forum inadequate or that the arbitral forum selected would be inadequate for some specific basis other than mere speculation. *See Venture Cotton Coop.*, 435 S.W.3d at 232.

We also agree with the Appellant that even if the specified method for selecting the arbitrator or the fee-sharing provision were otherwise found to be unconscionable those provisions would be severable. The Texas Supreme Court has explained that "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *Venture Cotton Coop.*, 435 S.W.3d at 230 (quoting *Poly-America*, 262 S.W.3d at 360); *see also* Restatement (Second) of Contracts § 208 cmt. g ("Where a term rather than the entire contract is unconscionable, the appropriate remedy is ordinarily to

14

deny effect to the unconscionable term."). Additionally, Paragraph 23 of the Employment Agreement expressly provides that the unenforceability of such provisions "shall not affect the validity and enforceability of any other provision" and an unenforceable provision is severable. Appellees did not argue to the trial court nor on appeal that the severance provision is unenforceable.

We conclude that neither of the challenged provisions constitutes the essential purpose of the agreement and such provisions would be severable and would not invalidate the entire arbitration provision in the Employment Agreement. *See Venture Cotton Coop.*, 435 S.W.3d at 230. We sustain Appellant's first issue.[1]

Motion for Temporary Injunction

In its second issue, Appellant argues that the trial court erred in granting Appellees' motion for temporary injunction. According to Appellant, Appellees failed to prove a probable, imminent, and irreparable injury before trial. In addition, Appellant argues that the order granting the temporary injunction fails to comply with Texas Rule of Civil Procedure 683 because it

> . . . fails to describe in a specific and legally sufficient manner the district court's reasons for determining the probable injury, why the probable injury is irreparable, why there is no adequate legal remedy,

---

[1] We also note that a party does not waive its right to make a challenge to the partiality of an arbitrator if it arbitrates without knowledge of undisclosed facts that would suggest partiality. *See Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 520, 528 (Tex. 2014).

15

and why the district court determined there is probable cause to believe that USMR would interfere with Williams and Romero's non-competitive employment.

Appellant also contends that the order granting a temporary injunction fails to include a date setting the matter for trial and because the order does not comply with Rule 683, it is void. Appellant argues that the temporary injunction is also improper because it does not preserve the status quo but rather "invit[es] [Appellees] to violate the terms of their existing Contracts[]" and "operates to prematurely determine the central issues in the case[.]"

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a temporary injunction, an applicant must show: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.*; *Mattox v. Jackson*, 336 S.W.3d 759, 762 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The temporary injunction applicant bears the burden of production to offer some evidence of each of these elements. *See In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002) (quoting *Camp v. Shannon*, 348 S.W.2d 517, 519 (Tex. 1961)); *Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Group, P.A.*, 190 S.W.3d 891, 897 (Tex. App.—Dallas 2006, no pet.). The applicant

16

need not establish that it ultimately will prevail at trial, only that it is entitled to preservation of the status quo pending trial on the merits. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Dallas Anesthesiology Assocs.*, 190 S.W.3d at 897.

The decision to grant or deny a temporary injunction rests within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204. We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court a resolution of conflicting evidence. *CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ). Our review of the trial court's decision is limited to the validity of its temporary injunction order; we do not consider the merits of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978). However, a temporary injunction will be dissolved if it is based on an erroneous application of the law to the facts. *See Dallas Gen. Drivers, Warehousemen and Helpers v. Wamix, Inc.*, 295 S.W.2d 873, 879 (Tex. 1956).

The trial court found the restrictions on solicitation of USMR's employees or customers and the use of USMR's proprietary information were reasonable, but then found the remaining terms of the noncompetition agreement were "unreasonable and unenforceable." In its order granting the temporary injunction, the trial court found

17

that the noncompetition agreement was "overly broad and not a reasonable restraint to protect the goodwill or other business interest" of USMR.

Before an injunction issues, there must be evidence that injury is threatened. *Id.* At the hearing, Romero and Williams testified that they had not yet gone to work for another employer. They testified that they wanted to go to work for another coin business. There was no evidence presented by Romero or Williams that USMR had taken any steps to enforce the contract or to prevent them from obtaining employment. Under Texas law, an injunction will not issue to prevent only speculative harm. *See Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988); *Dallas Gen. Drivers*, 295 S.W.2d at 879.

Appellees presented no evidence to the trial court of probable, imminent, and irreparable injury, and we conclude that the trial court's findings were not based on evidence. *See In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d at 204; *see also Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 687 (Tex. 1968) (dissolving temporary injunction where movant presented no evidence that it would suffer probable or irreparable injury if a temporary injunction was not granted); *Tex. State Bd. of Educ. v. Guffy*, 718 S.W.2d 48, 50 (Tex. App.—Dallas 1986, no writ) (dissolving a temporary injunction because "[t]he trial court had nothing before it from which it could conclude that a temporary injunction was

necessary to prevent irreparable injury[]" and explaining that "[t]he court was not free to base its injunction on speculative or conjectural harm[]"). Because we find no evidence to support the trial court's findings of irreparable injury, we need not address Appellant's remaining arguments that the order fails to comply with Rule 683. *See* Tex. R. App. P. 47.1. We sustain Appellant's second issue.

Having sustained both of Appellant's issues, we reverse the trial court's order denying the motion to compel arbitration, we dissolve the trial court's order granting temporary injunctive relief, and we remand to the trial court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
LEANNE JOHNSON
Justice

Submitted on September 20, 2018
Opinion Delivered December 13, 2018

Before McKeithen, C.J., Kreger and Johnson, JJ.