In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00344-CV**
_____

**JOHN E. POWELL, Appellant**

**V.**

**M/G FINANCE CO., LTD., Appellee**

_____

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-200,722**
_____

**MEMORANDUM OPINION**

Appellant John E. Powell appeals a judgment in favor of appellee M/G Finance Co., Ltd. (M/G) after a bench trial. In his sole issue, Powell argues the guaranty agreement is unenforceable because the agreement did not specify that it constituted a personal guaranty. We affirm the trial court's judgment.

BACKGROUND

M/G sued Engineered Well Service International Inc. (EWS) and Powell, asserting that Powell had entered into a written guaranty agreement with M/G, which

1

guaranteed EWS's payment pursuant to an equipment lease agreement EWS executed with M/G.[1] M/G contended that it provided a Cooper SP-400 workover rig to EWS pursuant to the lease, and that EWS "was required to make regular monthly rental payments according to the lease in the amount of $35,151.88 for 42 months" starting on December 2, 2015. According to M/G, Powell executed the lease on behalf of EWS as its chief executive officer. M/G pleaded that EWS and Powell held Powell out as having actual and apparent authority to act on behalf of EWS. M/G maintained that Powell represented that he held a majority ownership interest in EWS and was also willing to guaranty all EWS's debts and obligations. According to M/G, Powell executed a guaranty agreement "personally guarantying all debts and obligations under [the] lease." M/G contended that EWS defaulted on the terms of the lease, failed to pay rent when it was due, and breached the lease agreement, "triggering Powell's liability under the guaranty." M/G asserted that Powell had refused to pay the debt. M/G maintained that Powell "entered into [a] valid and enforceable contract personally, unconditionally and jointly and severally, guarantying the debts and obligations of [EWS]. . . ." In an unverified pleading, Powell entered a general denial and sought attorney's fees, costs, and interest.

---

[1]M/G recovered a judgment against both EWS and Powell; however, EWS did not file a notice of appeal and is not a party to this appeal.

The trial court conducted a bench trial. M/G called Charles B. Childress, senior vice president of M/G, as a witness. Childress testified that M/G is a lease company that focuses on equipment used in oil field service work. Childress explained that he is responsible for negotiating M/G's leases, acquiring the equipment M/G leases, and manages M/G's leases. Childress testified that he was involved in M/G's leasing of equipment to EWS, and he prepared the paperwork and sent it to Powell for signature. Childress explained that Powell signed the lease on behalf of EWS as EWS's chief executive officer. According to Childress, Dragon was the manufacturer of the equipment M/G leased to EWS, and M/G was the owner of the equipment. Childress testified that EWS defaulted under the terms of the lease.

Childress explained that Powell signed a personal guaranty of EWS's debt to M/G under the lease on the same date the lease was executed. A copy of the guaranty was admitted into evidence. The guaranty provided as follows, in pertinent part:

> In consideration of any lease, Master Lease Agreement, Equipment Schedule, credit or other financial accommodation, whether accompanying this Guaranty or made separately, now or hereafter extended or made to **Engineered Well Service International Inc.** ("Debtor"), or any of them, by **M/G Finance Company, Ltd.** ("Creditor"), and for other valuable consideration, the undersigned **John E. Powell** ("Guarantor"), unconditionally guarantees to Creditor the full and prompt payment and performance when due of any and all [i]ndebtedness, liabilities, debts and other duties of the Debtor to Creditor now existing or later incurred. . . . Guarantor represents and warrants that he/she/it has a direct financial interest in Debtor and that Guarantor will either directly or indirectly benefit from the extension of credit or other financial accommodation made to Debtor. . . . This Guaranty is a guaranty of payment and not collection, and the

3

obligations of Guarantor hereunder are independent of any obligations of Debtor under any instrument giving rise to Debtor's [i]ndebtedness to Creditor.

Powell signed the guaranty as "John E. Powell" without reference to his position as chief executive officer of EWS, and included beside the signature was Powell's social security number. EWS was listed beside the signature as Powell's "[p]rincipal place of business[.]" Also admitted into evidence were Powell's responses to M/G's requests for admissions, requests for production, and interrogatories, which included Powell's admissions that (1) he signed the guaranty, (2) he personally guaranteed payment of EWS's debts under the lease, and (3) EWS had not made the required rental payments. In response to a request for production that asked Powell to produce all agreements, correspondence, documents, or tangible things supporting any contention that he did not personally guarantee payment of EWS's debts under the lease, Powell responded, "NA[.]"

According to Childress, M/G would not have entered into the lease without the guaranty agreement. Childress agreed that the guaranty agreement identifies EWS as the debtor, M/G as the creditor, and Powell as the guarantor. Childress explained that EWS defaulted on the lease because EWS failed to make payments, and M/G sent a demand for payment to both EWS and Powell. Childress testified that the $1,116,378.96 amount due under the lease remains unpaid. According to Childress, Powell guaranteed that amount and has not paid the debt.

4

During his cross-examination of Childress, Powell's counsel asked, "in the exhibit that's the Continuing Guaranty, there's nowhere in there that explains to Mr. Powell that it's a personal guarantee, correct?" Childress responded that it is "clearly stated" in the document that it constitutes a personal guarantee. According to Childress, the agreement says that EWS is the debtor, M/G is the creditor, and Powell is the guarantor. When asked whether the phrase "personal guarantor" appeared in the guaranty, Childress testified, "[t]he answer is 'no,' but [Powell's] name is clearly written there." According to Childress, Powell signed some documents as chief executive officer of EWS, but Powell signed the guaranty personally. When defense counsel questioned Childress further about the nature of the guaranty agreement, M/G's counsel objected that Powell had already admitted in his requests for admissions that he personally guaranteed EWS's debt, and "it's inappropriate to try to admit evidence to the contrary." Childress was the only witness at trial.

After the bench trial, the trial court signed a judgment in favor of M/G against Powell for $1,716,378.96.[2] Powell appealed.

### POWELL'S ISSUE

In his sole issue, Powell contends the guaranty agreement is unenforceable because the agreement did not specify that it constituted a personal guaranty.

---

[2]Before trial, the trial court signed an agreed judgment in favor of M/G against EWS for $1,100,000 plus post-judgment interest.

5

Specifically, Powell asserts that the guaranty did not create a personal obligation as to him because the document is ambiguous. As mentioned above, Powell did not testify at trial. According to Powell, although the issue of the guaranty's alleged ambiguity was "not raised in the pleadings, the parties tried and argued the matter of ambiguity to the trial court[.]" Powell also argues that when the meaning of a contract of guaranty is uncertain, the terms of the guaranty are construed most favorably to the guarantor.

Rule 93 of the Texas Rules of Civil Procedure requires certain pleas to be verified, including a defendant's lack of legal capacity and that the defendant is not liable in the capacity in which he is sued. Tex. R. Civ. P. 93(1), (2). In addition, Rule 94 of the Texas Rules of Civil Procedure provides that affirmative defenses must be set forth affirmatively in pleadings. Tex. R. Civ. P. 94. Ambiguity of a contract is an affirmative defense that must be specifically pleaded in the trial court. *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 656 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). "When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived." *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *see* Tex. R. Civ. P. 67.

It is undisputed that Powell did not specifically plead lack of capacity or ambiguity, and Powell's answer was not verified. Therefore, we must determine

6

whether the issues of alleged ambiguity and lack of capacity were tried by consent. *See* Tex. R. Civ. P. 67; *Ingram*, 288 S.W.3d at 893. When defense counsel questioned Childress about whether the guaranty explicitly stated that it was a personal guaranty executed by Powell, M/G's counsel objected that Powell had admitted in his requests for admissions that he personally guaranteed EWS's debt, and "it's inappropriate to try to admit evidence to the contrary." During closing argument, defense counsel argued that "[n]ot one place in the entire document does it advise Mr. Powell that this is a personal guaranty." Defense counsel also argued that the guaranty was sent to EWS "with all the other documents" and was "signed at the same time." According to defense counsel, "[i]t's not a personal guaranty. It [is] not sufficiently drafted. It [is] not sufficiently specific for the gravity of it; and it didn't warn Mr. Powell that . . . this is different than the other stack of documents you signed[.]" In response, M/G's counsel asserted that the signature block on the lease document is different than the block on the guaranty, and counsel argued that "the very first page of the guaranty specifically identifies John E. Powell as the guarantor[.]"

As discussed above, Powell did not specifically plead ambiguity or lack of capacity, and Powell did not introduce any evidence at trial. Neither party presented evidence on the issues of ambiguity and lack of capacity, nor were the issues developed without objection. *See* Tex. R. Civ. P. 67; *Ingram*, 288 S.W.3d at 893.

The arguments of counsel do not constitute evidence. *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ). Generally, to be considered evidence, an attorney's statements must be made under oath. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). Because no evidence was adduced at trial regarding ambiguity or lack of capacity and M/G's counsel objected to defense counsel's questioning of Childress regarding whether the contract constituted a personal guaranty, we conclude that these defensive issues were not tried by consent. *See* Tex. R. Civ. P. 67; *Ingram*, 288 S.W.3d at 893; *Banda*, 955 S.W.2d at 272; *McCain*, 856 S.W.2d at 757.

Even if Powell's defensive issues had been tried by consent, by signing the guaranty agreement, Powell is deemed to know and understand its contents and is bound by its terms absent fraud, misrepresentation, or deceit. *See Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 500 (Tex. 2015). Powell neither pleaded nor introduced any evidence of fraud, misrepresentation, or deceit. Therefore, he is bound by the terms of the guaranty agreement. *See id.*

We turn now to Powell's assertion that the guaranty was ambiguous and did not specify that it constituted a personal guaranty by Powell. When a contract is unambiguous, the construction of the written contract is a question of law that we review *de novo*. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650-51 (Tex. 1999) (citations omitted). If a written instrument is worded so that it

can be given a certain or definite legal meaning, then it is not ambiguous, and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If the contract is subject to two or more reasonable interpretations, it is ambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citations omitted). A trial court determines as a question of law whether a contract is ambiguous by viewing it as a whole in light of the circumstances that existed when the contract was entered. *Coker*, 650 S.W.2d at 393.

We conclude that the guaranty agreement is not ambiguous. The guaranty agreement explicitly identified "John E. Powell" as the "Guarantor[,]" and specifically stated that the guaranty was being made "[i]n consideration of any lease . . . now or hereafter extended or made to" the debtor, EWS. The guaranty agreement contained Powell's personal social security number beside the signature block, and it did not reference Powell's status as chief executive officer of EWS. The written guaranty agreement between Powell and M/G can be given a definite legal meaning, and it is not subject to two or more reasonable interpretations. *See Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 393; *Coker*, 650 S.W.2d at 520.

For all these reasons, we overrule issue one and affirm the trial court's judgment.

AFFIRMED.

                                        _____

                                        W. SCOTT GOLEMON
                                              Chief Justice

Submitted on March 18, 2021
Opinion Delivered July 15, 2021

Before Golemon, C.J., Horton and Johnson, JJ.