# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1892

_____

Unison Co., Ltd.

*Plaintiff - Appellee*

v.

Juhl Energy Development, Inc.; Juhl Energy, Inc.; Winona Wind Holdings, LLC;
Winona County Wind, LLC; Daniel Juhl; John Mitola; John Brand; Bartly J.
Loethen; Audrey Loethen; Jeff Bendel

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 11, 2015
Filed: May 26, 2015

_____

Before GRUENDER, SHEPHERD, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Juhl Energy Development, Inc. (JEDI), appeals from the district court's order denying its motion to compel arbitration for contract disputes between JEDI and Unison Co., Ltd. (Unison). Because the arbitration clause in the Turbine Supply Agreement (TSA) covers the parties' dispute, we reverse the judgment.

## I.  Background

Unison is a South Korean company that manufactures, sells, delivers, and services Wind Turbine Generators (WTGs). JEDI is a corporate subsidiary of another named defendant, Juhl Energy, Inc., and is incorporated and located in Minnesota. JEDI and Unison are parties to the contractual agreements at issue; the other defendants are not.[1]  There are two agreements between JEDI and Unison that are relevant in this case: the TSA and the Financing Agreement (FA).  In the TSA, Unison agreed to design, manufacture, and sell two WTGs to JEDI for installation in Minnesota in exchange for $2,574,900; the effective date for the TSA was April 16, 2010.  In the FA, Unison agreed to lend to JEDI the amount of the TSA contract price—$2,574,900; the effective date for the FA was April 14, 2010.

Unison brought suit against JEDI in federal court in Minnesota, asserting 17 claims for relief, all of which relate to the FA.  JEDI filed a motion to compel arbitration, based on an arbitration clause in the TSA, and to dismiss Unison's complaint. Following a hearing, the district court denied the motion, and JEDI timely appealed.  This court has jurisdiction pursuant to 28 U.S.C. § 1294 and 9 U.S.C. § 16(a)(1)(C).

## II.  Discussion

"We review de novo the district court's denial of a motion to compel arbitration based on contract interpretation."  Indus. Wire Prods., Inc. v. Costco Wholesale Corp., 576 F.3d 516, 520 (8th Cir. 2009) (quotation omitted).  "If the district court's

---

[1]The parties concede all other defendants' rights regarding arbitration will be decided based on JEDI's right to compel arbitration, because the claims against all named defendants should be heard in one forum.

order concerning arbitrability is based on factual findings, we review such findings for clear error." Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quotation omitted). "The [Federal Arbitration Act] limits a district court's initial role in any challenge to an arbitration agreement to . . . 1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute *falls within the scope* of the arbitration agreement." Indus. Wire Prods., 576 F.3d at 520 (internal quotation omitted). The parties concede the arbitration clause in the TSA is valid; they disagree about whether it applies to Unison's complaint.

We must liberally construe a valid arbitration clause, "resolving any doubts in favor of arbitration . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008) (quotation omitted). In making this determination, we must decide whether the arbitration clause is broad or narrow. Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co., 118 F.3d 619, 621 (8th Cir. 1997) (finding the arbitration clause at issue was broad, because arbitration was available for claims both "arising from" and "relating to" the agreement). If the clause is broad, the "liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision." 3M Co., 542 F.3d at 1199 (quotations and internal citation omitted).

The arbitration clause at issue in this case is located in the TSA. The relevant paragraphs of the TSA read as follows:

16.1    <u>Negotiation of Disputes</u>. The Parties agree that in the event any dispute arises between them under or in connection with this Agreement or any legal relationship associated with or contemplated by this Agreement (the "Dispute"), the Parties shall first promptly make all reasonable efforts to resolve the Dispute by amicable negotiations involving senior representatives of the Parties. . . .

16.2    <u>Arbitration</u>. If the Parties fail to resolve the Dispute within 21 days pursuant to Section 16.1 (or any such longer period as Parties may mutually agree to in writing), then either Party may submit the Dispute for binding arbitration by delivering to the other Party a written notice (a "Notice of Arbitration") . . . .

According to the terms of the TSA, a Dispute is "any dispute" arising between the parties "under or in connection with [the TSA] or any legal relationship associated with or contemplated by [the TSA]." A party may then submit any such Dispute, if not resolved in a specified time, "for binding arbitration . . . ." The FA, in contrast, contains no such provision.

The arbitration clause in the TSA is at least as broad as the arbitration clauses this court has considered in two instructive cases. In <u>Fleet Tire</u>, the clause stated that "[a]ny controversy or claim arising out of or relating to this Agreement or any breach of its terms shall be settled by arbitration . . . ." 118 F.3d at 620. We found in <u>Fleet Tire</u> that the clause "constitutes the broadest language the parties could reasonably use to subject their disputes to that form of settlement, including collateral disputes that relate to the agreement containing the clause." <u>Id.</u> at 621. Similarly, in <u>3M Co.</u>, the arbitration clause at issue required arbitration if the parties disputed "the existence, cause, or value of any change to the scope of services Amtex was to provide." 542 F.3d at 1196 (paraphrasing the clause at issue). We concluded this language, too, was broad in scope. <u>Id.</u> at 1199.

-4-

The arbitration clause in the TSA covers any dispute that arises "in connection with" the TSA or "any legal relationship associated with or contemplated by" the TSA. We conclude that this language renders the arbitration clause in the TSA broad, not narrow, in scope.[2]

Because the arbitration clause is broad, we must then determine whether the underlying factual allegations touch on matters covered by the arbitration clause. See id. at 1199. As noted, the arbitration clause in this case covers disputes that arise in connection with "any legal relationship associated with or contemplated by [the TSA]." The question, then, is whether the FA—which makes no mention of arbitration—embodies a "legal relationship" that is either "associated with or contemplated by" the TSA.

The TSA specifically addresses the financing arrangement between Unison and JEDI, which is the subject matter of the legal dispute between the parties.[3] The TSA

_____

[2]Unison contends the TSA clause is permissive, rather than mandatory, and that this distinction requires us to construe the arbitration clause narrowly. However, whether an arbitration clause is permissive or mandatory does not, at least in this case, speak to whether the clause is broad or narrow.

[3]TSA ¶ 3.4 reads, in part, as follows:

Unison will provide financing to Purchaser for the purchase price of the WTGs

The loan proceeds shall be used solely for the payment of the Contract Price due Unison for the WTGs for the Project. . . .

The obligations of Purchaser under the Financing Documents shall be secured by a first-priority security interest in Purchaser's note from the user of the WTG. . . .

is contingent on finalizing the financing documents on or before the effective date of the TSA, and the FA expressly states that the parties have "entered into a Turbine Supply Agreement." The FA also limits the amount of JEDI's loan to "the aggregate amount of all payments due and payable to [Unison] under the Turbine Supply Agreement . . . ." And the FA conditions Unison's obligation to loan this money on, among other things, Unison having received a copy of "each Project Document." The FA, in turn, defines "Project Documents" to include the TSA. These cross-references, along with the interdependent nature of the parties' obligations under both the TSA and the FA, make it difficult to read these documents without reaching the conclusion that they are two parts of one overarching business plan between the same parties.[4] The TSA and the FA each embodies a legal relationship that is associated with, and contemplated by, the other. Any dispute regarding the FA would, therefore, be a dispute that is covered by the arbitration clause in the TSA.

---

The financing documents shall be prepared and negotiated on or before April 16th, 2010, and this Agreement shall be contingent upon finalizing such documents on or before said date.

[4]Dakota Gasification Co. v. Natural Gas Pipeline Co. of America, 964 F.2d 732 (8th Cir. 1992), is distinguishable from the present matter. There were two relevant agreements in that case—a gas purchase agreement and a financing agreement. However, the parties to the two agreements were not the same. The gas purchase agreement was executed between a partnership and four companies. The financing agreement was executed between the four companies and the U.S. Department of Energy—not the partnership. The court in that case held that the parties could not be compelled to arbitrate based on "the conditions under which the Secretary of Energy agreed to guarantee the financing for the gasification plant" in the financing agreement, because it was evident that any disputes with the Secretary of Energy were intended to be brought in federal court, rather than an arbitral forum. Dakota, 964 F.2d at 735–36. In this case, the parties to the TSA are also the parties to the FA, the agreements were contingent on one another, and there is no showing that any party required litigation in federal court as opposed to arbitration when entering into the agreements.

Unison contends, nevertheless, that the TSA arbitration clause cannot be interpreted to cover the present dispute without making the jurisdiction clause in the FA a nullity. We disagree because the jurisdiction clause answers a different question than does the arbitration clause. The FA jurisdiction clause reads as follows:

> Section 10.8      Submission to Jurisdiction; Service of Process.
>
> (a)      Borrower hereby submits to the jurisdiction of courts of the State of Minnesota in the County of Hennepin and of the United States for the Western District of Minnesota for any legal action or proceeding brought against it in connection with this Agreement and any other Financing Document. By execution and delivery of this Agreement, Borrower hereby irrevocably accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts.[5]

The TSA arbitration clause permits a party to submit a dispute to binding arbitration, while the FA jurisdiction clause simply identifies the agreed-upon jurisdiction "for any legal action or proceeding brought against it in connection with this Agreement and any other Financing Document." Notably, the jurisdiction clause does not address whether, or under what circumstances, a dispute must be litigated and resolved in court. As we read these two clauses, they are not in conflict: If a party wants to settle a dispute through arbitration, it may initiate arbitration proceedings under the TSA arbitration clause; if the parties choose not to arbitrate a dispute under the FA, or seek to enforce an arbitration decision, then the parties have consented to the jurisdiction of the state and federal courts in Minnesota for all litigation relating to that dispute. Had both documents included separate arbitration and jurisdiction

___

[5]As the district court recognized at the hearing, there is no Western District of Minnesota in the federal system. Further, Hennepin County is not in western Minnesota.

clauses, the parties may have negotiated a different contractual agreement. But as the documents are written, enforcing the arbitration clause in the TSA in a dispute alleging violations of the FA does not render the jurisdiction clause in the FA a nullity.[6]

"When the parties have agreed on an arbitration clause that appears to cover their dispute, it should be upheld." 3M Co., 542 F.3d at 1199. The arbitration clause in the TSA is a broad one. And the dispute concerning the FA, at a minimum, touches on matters subject to the arbitration clause. The TSA arbitration clause therefore covers the disputes alleged in this case.

### III.    Conclusion

We reverse the denial of JEDI's motion to compel arbitration. On remand, the district court may decide in the first instance whether it is appropriate at this juncture to dismiss Unison's complaint or stay the action in federal court pending the outcome of the arbitration proceedings. See Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 769–70 (8th Cir. 2011).

SHEPHERD, Circuit Judge, concurring.

I concur in the court's opinion reversing the denial of JEDI's motion to compel arbitration. I write separately to reiterate my view that section 3 of the Federal Arbitration Act unambiguously directs a district court to stay an action and does not give a district court the discretion to dismiss an action. See Green v. SuperShuttle

---

[6]The parties also disagree about the meaning of TSA ¶ 18.3, the "Conflicting Provisions" section of the TSA, and what effect it has on the application of the FA jurisdiction clause in this case. Because the TSA arbitration clause and FA jurisdiction clause do not conflict and can be applied harmoniously, we need not address this issue.

Int'l, Inc., 653 F.3d 766, 770-71 (8th Cir. 2011) (Shepherd, J., concurring); see also 9 U.S.C. § 3 (district courts "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). Recognizing, however, that we are bound by prior panel decisions from our court, I also concur in the direction that the district court may decide whether it is appropriate to dismiss or stay the action.

_____