# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1191

_____

Matthew Dickson, individually and on behalf of all others similarly situated; Jennifer Dickson, individually and on behalf of all others similarly situated

*Plaintiffs - Appellees*

v.

Gospel for ASIA, Inc.; Gospel for ASIA - International; K. P. Yohannan; Gisela Punnose; Daniel Punnose; David Carroll; Pat Emerick

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: December 12, 2017
Filed: August 31, 2018

_____

Before SMITH, Chief Judge, ARNOLD and KELLY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Matthew and Jennifer Dickson sued Gospel for ASIA, Inc., one of its affiliates, and members of its board of directors and staff (collectively, GFA), alleging, in a nutshell, that GFA "solicit[ed] charitable donations to benefit the poorest of the poor while covertly diverting the money to a multi-million dollar personal empire." The

Dicksons raised, on behalf of themselves and a class of those similarly situated, a claim under the Racketeer Influenced and Corrupt Organizations Act and state-law claims for fraud, unjust enrichment, and violating the Arkansas Deceptive Trade Practices Act. GFA moved to compel arbitration of the claims based on language found in "Statement[s] of Agreement" that the Dicksons had signed. The district court denied the motion, holding that the agreements lacked "mutuality of obligation" because GFA promised nothing in return for the Dicksons' promise to arbitrate. The district court also concluded that the dispute did not fall within the scope of the arbitration language. We disagree on both scores and therefore reverse and remand.

The Dicksons were members of GFA for about five years, during which time Matthew worked for GFA. The agreements the Dicksons signed are admittedly not like the arbitration agreements we typically construe—they essentially contain the GFA mission statement and a series of religious and lifestyle pledges. Near the end of the agreements sits the provision we have to interpret. It begins, "I agree that any and all disputes of any kind arising out of the relationship between myself and GFA, or any other GFA member, shall be resolved by way of conciliation, or mediation, the parties agreeing that the matter will be submitted to final and binding arbitration in accordance with the rules and procedures set forth in the Unif[orm] Arbitration Act." It then provides, "Accordingly, I knowingly and willingly waive any and all rights to initiate any action before any administrative agency or court of law or equity."

We review de novo the district court's denial of a motion to compel arbitration when the denial is based on the interpretation of a contract. *See Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015). When reviewing an arbitration clause, we ask only whether a valid arbitration agreement exists and, if so, whether the particular dispute falls within the terms of that agreement. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). State contract law governs whether an arbitration agreement is valid, *id.*, and the parties here agree that Texas law applies. Under Texas law, consideration must support an arbitration agreement. *In re Palm*

*Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006). Consideration may take the form of a reciprocated promise to arbitrate or, when an arbitration clause is part of a larger, underlying contract, undertakings in the remainder of the contract may serve as consideration for the arbitration clause. *Id.*

We acknowledge that the artless arbitration provision we must construe here is far from clear, but we nevertheless conclude that, properly read, it creates an enforceable reciprocal agreement to arbitrate disputes. In reaching this conclusion, we focus on the fact that the arbitration clause says that "the parties" agree that any disputes will be submitted to binding arbitration. That the subject of that clause is "the parties," rather than "I," is telling, especially since "I" is the subject of the clause immediately before and in the sentence immediately after. In fact, "I" is the subject of many of the pledges set forth in the agreements, except, notably, when the agreements replace "I" with "the parties" in the clause that mentions arbitration. And if there exists any confusion over who "the parties" are, the next paragraph of the agreements explain that the agreements are "between Gospel for Asia and the undersigned." Under Texas law, courts "presume parties intend what the words of their contracts say." *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764 (Tex. 2018).

We also agree with GFA that the sentence stating, "Accordingly, I knowingly and willingly waive any and all rights to initiate any action before any administrative agency or court of law or equity," does not cut against the previous statement that "the parties" agree disputes will be submitted to arbitration. We think that the purpose of the sentence is to ensure that the signatory understood the import of the agreement to arbitrate. And we reject the argument that GFA was not bound to arbitrate simply because it did not sign the agreement. Texas law does not require parties to sign an arbitration agreement so long as courts can tell that the parties agreed to it. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (per curiam); *see also Wright v. Hernandez*, 469 S.W.3d 744, 756–57 (Tex. App. 2015). We have no doubt that GFA assented to the agreements at issue and intended them to be enforceable:

GFA drafted the agreements and affixed its letterhead to them; it maintained the agreements; and it seeks to enforce them. *See Wright*, 469 S.W.3d at 761.

Even if we acceded to the dissent's interpretation of the agreements, we think that GFA's promise to be bound by the result of an arbitration proceeding that the Dicksons initiate is sufficient consideration to render the agreements enforceable. In other words, a reciprocal promise to arbitrate is not required. The dissent relies on a Texas Supreme Court decision that observed in passing, and without citation to authority, that "[a]n arbitration agreement is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015). But the plaintiff's contention in *Royston* was that the defendant had not actually promised to arbitrate; here, the question is whether the promise the defendant made to be bound by arbitral proceedings was sufficient consideration. The *Royston* court rejected the plaintiff's argument "because consideration exists for the [arbitration] provision," noting that "the mere fact that an arbitration clause is one-sided does not make it illusory." *Id.* If anything, then, *Royston* supports our conclusion. We are confident that, if the Texas Supreme Court were directly confronted with the issue we now face, it would hold that any consideration of the usual kind is sufficient to support a promise to arbitrate, including a promise to be bound by arbitration initiated by the other party. *See, e.g.*, *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999); *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 378–79 (4th Cir. 1998). It is important to note that the Federal Arbitration Act requires that states place arbitration agreements on an equal footing with other contracts, *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017), so requiring identical reciprocal promises only for arbitration agreements would be contrary to federal law.

Since valid arbitration agreements exist, we are left to determine whether the disputes here fall within the scope of those agreements. We liberally construe

arbitration agreements by resolving any doubts in favor of arbitration unless we can say "with positive assurance" that the arbitration clause cannot be construed to encompass the dispute. *Unison*, 789 F.3d at 818. When an arbitration provision is broad, the federal policy favoring arbitration requires a district court to send claims to arbitration "as long as the underlying factual allegations simply touch matters covered by the arbitration provision." *Id.* Without question, the arbitration agreements here are broad. *See Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017); *Cedillo v. Immobiliere Jeuness Establissement*, 476 S.W.3d 557, 568 (Tex. App. 2015).

We conclude that the district court interpreted the scope of the arbitration agreements too narrowly, reasoning that, since none of the mission statements or pledges found in the agreements "reach" donations made to the church, the dispute was "entirely unrelated to" the parties' agreements. Even if the agreements do not reach donations made to GFA, a point we do not decide, the district court erred because the arbitration agreements did not apply only to disputes arising out of the agreements; rather, they applied by their terms to "any and all disputes of any kind arising out of the relationship" between the Dicksons and GFA, and we cannot say "with positive assurance" that the donations the Dicksons made to GFA did not arise out of that relationship.

Reversed and remanded.

KELLY, Circuit Judge, dissenting.

I would affirm the district court because I do not think the arbitration clause creates an enforceable reciprocal agreement to arbitrate disputes. As I read the arbitration clause, only the Dicksons agree to take their disputes to arbitration. While GFA arguably agrees to be bound by arbitration if the Dicksons initiate arbitration ("the parties agreeing . . ."), the use of the word "I" to begin the provision tells me

-5-

that GFA has not agreed to take any dispute it might have to arbitration, but instead has reserved the option to litigate rather than arbitrate. Under Texas law, an arbitration agreement, like any other contract, "is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate." Royston, 467 S.W.3d at 505 (relying on Restatement (Second) of Contracts § 77 cmt. a (Am. Law Inst. 1981)); see also Huckaba v. Ref-Chem, L.P., 892 F.3d 686, 691 n.5 (5th Cir. 2018) (noting Royston's holding that an arbitration agreement is unenforceable under Texas law "if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate").[1] Other jurisdictions have concluded otherwise—i.e., that one party's agreement to be bound by the result of an arbitration proceeding is sufficient consideration—but Texas law is applicable here. Accordingly, I respectfully dissent.

———————————————

[1]Nor do the underlying agreements provide consideration for the arbitration clause because there is no "bargained for exchange" in any of the agreements. See Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 496 (Tex. 1991) (Under Texas law, "[c]onsideration is a present exchange bargained for in return for a promise" that may be either "a benefit to the promisor or a detriment to the promisee.").