# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 21-2719

———————————————

Katherine Anderson; Jason Anderson

*Plaintiffs - Appellees*

v.

Jeffrey Hansen

*Defendant - Appellant*

—————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

—————————

Submitted: April 12, 2022
Filed: August 30, 2022

—————————

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

—————————

SMITH, Chief Judge.

Katherine and Jason Anderson, independent contractors of American Family Life Insurance Company of Columbus (Aflac), alleged that Jeffrey Hansen, an Aflac employee, sexually assaulted Katherine in her hotel room during a work conference in St. Louis, Missouri. The Andersons filed suit against Hansen, asserting tort claims for battery, assault, false imprisonment, and loss of consortium, among others.

Hansen moved to compel arbitration of the claims, claiming that he is a third-party beneficiary under the Andersons' Arbitration Agreements with Aflac. The district court[1] denied the motion as to the aforementioned claims, holding that they did not arise under or relate in any way to the arbitration agreements. Hansen appeals, arguing that the claims fall within the scope of the arbitration agreements. We affirm.

## I. *Background*[2]

Katherine and Jason Anderson were independent contractors for Aflac in Colorado. Katherine attended an Aflac work conference on August 29–30, 2018, in St. Louis, Missouri. Hansen, a W-2 Business Development Manager for Aflac in Minnesota, also attended the conference. According to the Andersons, Katherine attended the first portion of the conference on August 29. After the attendees were dismissed for the evening, Katherine joined other attendees for dinner, followed by drinks at a bar where Hansen purchased Katherine a drink. After an evening of drinking, Katherine returned to her hotel room. After midnight on August 30, Hansen forcibly entered Katherine's hotel room and raped her.

Based on the incident, the Andersons' counsel sent Aflac a demand letter setting forth "claims against A[flac] for negligent hiring, retention, and supervision, and for Title VII violations." Appellant's Add. at 27. While "the exact allegations against Aflac are not part of the record in this case," Aflac ultimately settled with the Andersons. *Anderson v. Hansen*, 550 F. Supp. 3d 725, 727 (E.D. Mo. 2021).

---

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

[2]For purposes of this appeal, we assume the truth of the allegations set forth in the Andersons' complaint. *See Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.*, 468 F.3d 523, 525 (8th Cir. 2006).

After settling with Aflac, the Andersons filed suit against Hansen. Relevant to the present appeal, the Andersons raised tort claims for battery, assault, false imprisonment, and loss of consortium.[3] In response, Hansen moved to compel arbitration based on Arbitration Agreements contained in the Andersons' Associate's Agreements. The Andersons' Arbitration Agreements provided:

> [T]he parties agree that any dispute arising under or related in any way to this Agreement ("Dispute"), to the maximum extent allowed under the Federal Arbitration Act ("FAA"), shall be subject to mandatory and binding arbitration, including any Dispute arising under federal, state or local laws, statutes or ordinances . . . or arising under federal or state common law . . . . It is further agreed that, in any Dispute between the parties, all past and present officers, stockholders, employees, associates, coordinators, agents and brokers of Aflac, who are alleged to be liable or may be liable in any manner to either party based upon the same allegations made against a party to this Agreement, are intended to be third-party beneficiaries of this Arbitration Agreement with full rights to enforce it. Associate also understands and agrees that, regardless of whether Aflac is a party, this Arbitration Agreement shall be applicable to any dispute between Associate and any past and present officers, stockholders, employees, associates, coordinators, agents and brokers of Aflac.

R. Doc. 47-4, at 19–20, 43–44.

In his motion to compel, Hansen argued that he is a third-party beneficiary under the Arbitration Agreements and, therefore, the entire action must be submitted to arbitration. The Andersons responded that Hansen had waived any right he may have to arbitration and, in the alternative, their claims fell outside the scope of the Arbitration Agreements.

---

[3]The Andersons also brought a claim for tortious interference with contract. This claim is not at issue in the present appeal.

Relevant to the present appeal, the district court rejected the Andersons' argument that Hansen had waived his right to arbitration. But the court also denied Hansen's motion to compel arbitration of the Andersons' tort claims for battery, assault, false imprisonment, and loss of consortium. The court held that those claims "are not claims 'arising under or related in any way to' the Associate's Agreements." *Anderson*, 550 F. Supp. 3d at 731. Instead, the court reasoned, the "claims [were] for an alleged sexual assault and 'rest on independent . . . grounds, which have no relation to the terms of the Agreement and in no way depend on its existence.'" *Id.* at 732 (second alteration in original) (quoting *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 811 (8th Cir. 2017)). The court explained that the Andersons' allegations that Hansen "drugged Katherine Anderson at a bar and proceeded to forcibly rape her in a hotel room. . . . are not in any way related to Katherine Anderson's role as a Regional Sales Coordinator for Aflac." *Id.* The court determined with "'positive assurance' that there is no reasonable interpretation of the Arbitration Agreements pursuant to which the aforementioned claims could be subject to arbitration." *Id.* (quoting *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873–74 (8th Cir. 2018)).

## II. *Discussion*

On appeal, Hansen argues that the district court erred in denying his motion to compel arbitration on the Andersons' tort claims for battery, assault, false imprisonment, and loss of consortium because those claims are related to the Andersons' Associate's Agreements with Aflac. Specifically, Hansen argues that the claims "touch matters covered by the arbitration provision" and therefore are subject to arbitration. Appellant's Br. at 9 (quoting *Parm*, 898 F.3d at 874).

The Federal Arbitration Act vests us with jurisdiction over this interlocutory appeal. *See* 9 U.S.C. § 16(a)(1)(B) ("An appeal may be taken from . . . an order . . . denying a petition under section 4 of this title to order arbitration to proceed . . . .").

-4-

We review de novo the district court's denial of a motion to compel arbitration based on contract interpretation. If the district court's order concerning arbitrability is based on factual findings, we review such findings for clear error. Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. The Federal Arbitration Act limits a district court's initial role in any challenge to an arbitration agreement to 1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute *falls within the scope* of the arbitration agreement.

*Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015) (cleaned up).

Here, neither party disputes the validity of the Arbitration Agreements; instead, they disagree about whether the Arbitration Agreements apply to the Andersons' claims.

We must liberally construe a valid arbitration clause, resolving any doubts in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. In making this determination, we must decide whether the arbitration clause is broad or narrow. If the clause is broad, the liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration as long as the underlying factual allegations simply touch matters covered by the arbitration provision.

*Id.* (cleaned up).

The Arbitration Agreements provide that

any dispute *arising under or related in any way* to this Agreement ("Dispute"), to the maximum extent allowed under the Federal

-5-

Arbitration Act ("FAA"), shall be subject to mandatory and binding arbitration, including any Dispute arising under federal, state or local laws, statutes or ordinances . . . or arising under federal or state common law . . . .

R. Doc. 47-4, at 19–20, 43–44 (emphasis added).

"The Andersons do not dispute that the arbitration clause at issue is broad." Appellees' Br. at 7. "Because the arbitration clause is broad, we must . . . determine whether the underlying factual allegations touch on matters covered by the arbitration clause." *Unison Co.*, 789 F.3d at 819. The factual allegations underlying the Andersons' claims for battery, assault, false imprisonment, and loss of consortium pertain to Hansen's alleged sexual assault of Katherine.

As the district court correctly observed, we have not previously "addressed whether tort claims for sexual assault arise out of or are related to an employment contract." *Anderson*, 550 F. Supp. 3d at 731. But our sister circuits have considered "arbitration provision[s] and factual allegations similar to those in the present case." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1215 (11th Cir. 2011) (citing *Jones v. Halliburton Co.*, 583 F.3d 228 (5th Cir. 2009)).

For example, in *Doe*, the Eleventh Circuit held that an arbitration provision limited to claims "relating to or in any way arising out of or connected with the Crew Agreement, these terms, or services performed for the Company" did not extend to tort claims based on allegations that a coworker sexually assaulted the plaintiff in a crewmember's cabin on a cruise ship. *Id.* at 1218. There, the plaintiff was a cruise-line employee who signed a contractual agreement with the cruise line containing an "Arbitration Notice & Agreement" in which the employee "agree[d] that any and all disputes shall be referred to and resolved by binding arbitration as provided for in the Principal Terms and Conditions of Employment." *Id.* at 1214. In turn, that document contained an arbitration provision, stating:

. . . [T]he Company and crew member agree that *any and all disputes, claims, or controversies whatsoever* (whether in contract, regulatory, tort or otherwise and whether pre-existing, present or future and including constitutional, statutory, common law, admiralty, intentional tort and equitable claims) *relating to or in any way arising out of or connected with the Crew Agreement, these terms, or services performed for the Company*, including but not limited to wage and benefit matters, employment applications, wrongful termination or discrimination claims, property loss or damage, *personal injury*, death or any other claim, no matter how described, pleaded or styled [collectively, "Disputes"] between the crew member and the Company or others, including against the master, shipowner, vessel, vessel operator, charterer, or any other third party, including also, but not limited to, Princess Cruises, P&O Cruises Australia, and Cunard Line, *shall be referred to and resolved exclusively by binding arbitration. . . .*

*Id.* at 1214–15 (alterations in original).

The cruise-line employee was drugged, raped, and physically injured by other employees in a crewmember's cabin while she was unconscious. *Id.* at 1209. She filed suit against the cruise line, asserting, among others, tort claims for false imprisonment, intentional infliction of emotional distress, spoliation of evidence, invasion of privacy, and fraudulent misrepresentation. *Id.* at 1212. The cruise line moved to compel arbitration. *Id.* The district court denied the motion, relying on *Jones*. *Id.* In *Jones*, the Fifth Circuit had held that an employee's tort claims, arising from an alleged gang-rape of the employee while she was stationed at company facility in Iraq, were not "related to" her employment within the meaning of arbitration provision. 583 F.3d at 241. There, the sexual assault occurred

(1) . . . by several Halliburton/KBR employees *in [the employee's] bedroom, after-hours*, (2) while [the employee] was *off-duty*, (3) following a social gathering outside of her barracks, (4) which was some distance from where she worked, (5) at which social gathering several

co-workers had been drinking (which, notably, at the time was only allowed in "non-work" spaces).

*Id.* at 240.

On appeal in *Doe*, the cruise line attempted to distinguish *Jones* "based on the fact that the ship is the very 'framework' of the seaman's existence and unlike [the employee in *Jones*], [the cruise-line employee] was 'continually in the service of the vessel and subject to the call of duty at any time' simply by virtue of being a seaman." *Doe*, 657 F.3d at 1217. The Eleventh Circuit rejected this argument, concluding that such an interpretation of the arbitration provision "would effectively erase the arbitration provision's limiting language." *Id.* "If the cruise line had wanted a broader arbitration provision," the court explained,

> it should have left the scope of it at "any and all disputes, claims, or controversies whatsoever" instead of including the limitation that narrowed the scope to only those disputes, claims, or controversies "relating to or in any way arising out of or connected with the Crew Agreement, these terms, or services performed for the Company." That would have done it, but the company did not do that. Instead, after including that limiting language, it now argues that we should ignore the limitation and force [the employee] to arbitrate any and all disputes, claims, or controversies without regard to whether they relate to, arise out of, or are connected with her employment or her service as an employee. That we cannot do. If the language about employment and services as an employee did not limit the scope of the arbitration provision, it would have no purpose, and that is an interpretative no-no.

*Id.* at 1218 (citations omitted).

The court next addressed why "the terms used in the limiting language [of the arbitration provision] are not unlimited in scope." *Id.* First, the court acknowledged that "[t]he term 'arising out of' is broad"; however, that broad term "is not all

encompassing." *Id.* This is because the term "requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract." *Id.* (citing *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause.")). Second, the court characterized the term "related to" as "limiting language" that "marks a boundary by indicating some direct relationship." *Id.* Third, the court defined "[c]onnected with" as "connot[ing] the necessity of some direct connection." *Id.* at 1219.

Applying these definitions, the court held that the tort claims were not within the scope of the arbitration provision because they did "not arise from, . . . relate to, . . . and [were] not connected with the parties' crew agreement or the services that [the employee] performed for Princess Cruise Lines." *Id.* This was because "those claims involve[d] factual allegations about how the cruise line and its officials treated [the employee] after learning that she had been raped . . . . Nothing about those allegations relate[d] to, ar[o]se out of, or [were] connected with [the employee's] crew agreement or her duties for Princess Cruise Lines as a bar server." *Id.* The court pointed out that "[t]he cruise line could have engaged in that tortious conduct even in the absence of any contractual or employment relationship with [the employee]." *Id.* The court characterized as "incidental" the "fact that [the employee] might not have been on the cruise ship if she had not been working for the cruise line"; that fact did not render "her claims relate[d] to, aris[ing] from, or . . . connected with the crew agreement and the services that she performed as an employee." *Id.* The court reasoned that "[t]he parties could each have fulfilled all of their duties under the crew agreement and [the employee] could have perfectly performed her services for the cruise line, and the parties still be embroiled in the dispute alleged in [the employee's] common law claims." *Id.* at 1219–20. The court illustrated its point:

-9-

> [A] passenger could have brought these same [tort] claims against the cruise line based on virtually the same alleged facts: a crew member invited the passenger to a crew party in a cabin; the crew member gave the passenger an open beer that turned out to contain a date rape drug; the passenger woke up in the crew cabin and realized she had been raped; cruise line officials treated the passenger with contempt, delayed her attempt to report of the rape, would not let her leave the ship, and otherwise hindered her efforts to meet with an attorney and to get medical treatment onshore.

*Id.* at 1220. Because it concluded that "those five [common-law tort] claims [were] not 'an immediate, foreseeable result of the performance' of the parties' contractual duties or [the employee's] services as a Princess Cruise Lines employee," the court held that they were "not within the scope of the arbitration clause." *Id.* at 1219.

"The *Jones* and *Doe* courts both accepted that the sexual assault alleged in each case would not have occurred 'but for' the plaintiff's employment with the defendant company, but determined nonetheless that the circumstances giving rise to the claim were outside the scope of her employment." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183 (2d Cir. 2021). Both courts reasoned that "'[r]elatedness' could not encompass everything that touched employment in any way." *Id.* "[I]n the context of an employment arbitration agreement, a claim will 'relate to' employment only if the merits of that claim involve facts particular to an individual plaintiff's own employment." *Id.* at 184 (citing *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017) ("[W]e are persuaded by the reasoning of the Fifth And Eleventh Circuits, which have previously interpreted arbitration agreements covering disputes that 'arise out of' or 'relate to' a contractual or employment relationship.")).

We find *Jones* and *Doe* persuasive in resolving whether the Andersons' allegations of sexual assault touch matters covered by the Andersons' Arbitration Agreements. *Cf. Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th

Cir. 2009) ("[F]ederal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement."). The Andersons' Arbitration Agreements provide that "any dispute arising under or related in any way to th[e] [Associate's] Agreement . . . shall be subject to mandatory and binding arbitration." R. Doc. 47-4, at 19, 43. This language is substantially similar to the *Doe* arbitration provision, which used the phrase "relating to or in any way arising out of or connected with the Crew Agreement." *Doe*, 657 F.3d at 1218.

Applying *Doe*'s definitions of "arising" and "related to" to the present case means that the Andersons' underlying factual allegations of sexual assault must have some "direct relationship" with the Andersons' *Associate's Agreements* to be arbitrable. *See id*. at 1218. They do not. All of the Andersons' tort claims involve factual allegations about Hansen drugging Katherine Anderson at a bar and forcibly raping her in a hotel room. Nothing about those allegations arose under or related in any way to the Andersons' *Associate's Agreement*s. *See id.* at 1219.

Just like the perpetrators in *Jones* and *Doe*, Hansen could have engaged in the alleged "conduct even in the absence of any contractual or employment relationship [between Aflac and the Andersons]." *Id.* The "fact that [Katherine Anderson] might not have been" at a bar and staying in a hotel but for the Aflac work conference was an "incidental" fact. *Id.* In other words, "[t]he parties could each have fulfilled all of their duties under the [Associate's Agreements] and [Katherine Anderson] could have perfectly performed her services for [Aflac], and the parties [would] still be embroiled in the dispute alleged in [t]he [tort] claims." *Id.* at 1219–20; *see also Jones*, 583 F.3d at 240.

In summary, we hold that the Andersons' tort claims do not fall within the scope of the Arbitration Agreements. The facts underlying the Andersons' tort claims do not touch matters covered by the Andersons' Arbitration Agreements in light of the Agreements' limiting language requiring the "dispute aris[e] under or relate[] in

any way to th[e] *[Associate's] Agreement[s]*." R. Doc. 47-4, at 19, 43 (emphasis added). As a result, the district court did not err in denying Hansen's motion to compel arbitration.[4]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

GRASZ, Circuit Judge, dissenting.

This case illustrates the old adage that "bad facts make bad law." The facts here are indeed bad: the Andersons alleged Katherine was drugged and raped in her hotel room during a work conference and then suffered emotional and psychological symptoms that had a lasting impact on her career. Faced with these bad facts, the court sidesteps our precedent on arbitration and instead blazes a new trail by relying on caselaw from other circuits. While the court's outcome may be preferable as a matter of public policy, I believe it is at odds with our precedent. I therefore respectfully dissent.

The Andersons agreed to arbitrate any dispute "arising under or related in any way to" the Associate Agreement. We have said such arbitration clauses with "arising out of" or "relating to" language "constitute[] the broadest language the parties could reasonably use to subject their disputes to that form of settlement[.]" *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 874 (8th Cir. 2018) (quoting *Fleet Tire Serv. Of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997)). Indeed, such provisions even cover "collateral disputes that relate to the agreement containing the clause." *Id.* (quoting same). For broad clauses like this one, we

---

[4]Because we hold that the claims' underlying factual allegations do not fall within the scope of the Arbitration Agreements, we need not address whether Hansen is a third-party beneficiary of such agreements or whether Hansen waived his right to arbitration.

-12-

enforce arbitration if "the underlying factual allegations simply touch matters covered by the arbitration provision." *Id.* (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)).

The court, however, evades these well-established principles. After acknowledging that our caselaw specifies the factual allegations need only "simply touch matters covered by the arbitration provision," *ante*, at 5, the court then borrows language from the Eleventh Circuit that "requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract." *Id.* (quoting *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011)). The court then seemingly adopts a "but for" test employed by the Second Circuit. *See id.* at 10 (citing *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183 (2d Cir. 2021)). How those two tests can be reconciled with ours—which covers "collateral disputes" and requires only that the factual allegations "simply touch matters covered by the arbitration provision"—is unexplained.

Applying our circuit's framework here, I believe that the Andersons' allegations "simply touch" the Associate Agreement and are thus subject to arbitration. The Andersons allege that, because of the rape, Katherine continually struggled interacting with Hansen at work, and eventually concluded she was unable to maintain a leadership position with Aflac and requested a demotion. By the Andersons' own admission, Katherine's work was terminated "[a]s a direct and proximate result of the rape[.]" In the settlement agreement between the Andersons and Aflac, the Andersons asserted they had "potential claims against Aflac related to" the alleged rape. The settlement agreement also outlined the Andersons' termination of independent contractor status. Considering these facts, I believe the Andersons' claims "touch" the Associate Agreement.

It may be that, as a matter of public policy, the court should deviate from our established standard. This path may be all the more appealing in this particular case

-13-

in light of the passage and signing of the "Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021," Pub. L. No. 117-90, 136 Stat. 26 ("EFASASH Act"). But the court's opinion does not grapple with that question, and the Andersons did not meaningfully develop a public policy argument. In any event this panel cannot overrule circuit precedent, see *United States v. Spencer*, 998 F.3d 813, 819 n.3 (8th Cir. 2021), and, as numerous district courts have recognized, the EFASASH Act cannot be applied retroactively. *See, e.g., Matthews v. Gucci*, 2022 WL 462406, at *11 n.8 (E.D. Penn. Feb. 15, 2022) (noting "the [EFASASH] Act does not apply here since this case arose before its enactment"). So, while I sympathize with desire to allow the Andersons to litigate in court, I do not believe this is what the law today allows. I respectfully dissent.

_____