# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-3578

———————————————

Kristi VonDeylen

*Plaintiff - Appellee*

v.

Aptive Environmental, LLC

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: October 23, 2025
Filed: March 5, 2026
[Unpublished]

——————————

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

——————————

PER CURIAM.

The district court let Kristi VonDeylen make a federal case out of some unwanted texts. We agree with the sender, Aptive Environmental, LLC, that the dispute belongs in arbitration.

I.

VonDeylen hired Aptive to provide pest-control services. In addition to requiring quarterly home treatments, the service agreement had an arbitration provision. Two years after the company made its final service call, it sent her several text messages, including one about enabling the "autopay" feature on her account and another about an "upcoming appointment."

She filed a lawsuit in federal court alleging that the messages violated the Telephone Consumer Protection Act, *see* 47 U.S.C. § 227(b)(3), and invaded her privacy under Minnesota law. When Aptive moved to compel arbitration, the district court concluded the dispute did not belong there. We review the denial de novo. *See Indus. Wire Prods., Inc. v. Costco Wholesale Corp.*, 576 F.3d 516, 520 (8th Cir. 2009); *see also* 9 U.S.C. § 16(a)(1)(A), (B).

II.

"[A]rbitration is a matter of contract." *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) (citation omitted). Rather than just interpreting the text, however, we have added a special framework for arbitration provisions. Under it, "broad" ones are read inclusively: even collateral matters are arbitrable "as long as the underlying factual allegations . . . touch matters covered by" the language. *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 874 (8th Cir. 2018) (citation omitted). "[N]arrow" clauses are not. *United Steelworkers v. Duluth Clinic, Ltd.*, 413 F.3d 786, 789–90 (8th Cir. 2005). Although there is reason to believe, as VonDeylen argues, that a recent Supreme Court decision requires us to reexamine this line of precedent, *see Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (directing us to treat arbitration agreements like "any other kind" of contract), we can decide this case without doing so. Here, with or without the extra step, the outcome is the same: VonDeylen's claims are subject to arbitration.

The service agreement sends "any controversy, dispute[,] or claim . . . *arising out of or relating to* this Agreement, or the services performed by Aptive under this Agreement or any other agreement, or the relationship between [VonDeylen] and Aptive resulting from any of the foregoing" to arbitration. (Emphasis added). As we have recognized, the phrase "arising out of or relating to" is "the broadest language the parties could [have] reasonably use[d]." *Parm*, 898 F.3d at 874 (citation omitted). It means that VonDeylen's claims must head to arbitration if they "pertain" or have some logical "connection," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992), to the parties' contractual "relationship." *See id.* (defining "relating to" as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with" (quoting *Black's Law Dictionary* 1158 (5th ed. 1979))).

Here, they do. The unwanted texts have a "connection," *id.*, to the "relationship between [VonDeylen] and Aptive resulting from" the "Agreement" and "services performed by Aptive under [it]." For the texts about setting up autopay and closing her account, the link comes from a provision contemplating "communicat[ions] . . . regarding [her] account." Even the ones apparently sent in error, which let her know about an upcoming appointment and a technician visit, were arguably for the purpose of "schedul[ing] and/or confirm[ing] service times." In short, each dispute centers around what the service agreement allowed Aptive to do.

It makes no difference that Aptive sent them approximately two years after its last service call. VonDeylen argues that the texts could not "relat[e] to" a "relationship" or "agreement" that had already ended. But the arbitration provision does not have a sunset clause. *See Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, 959 F.3d 903, 913 (8th Cir. 2020) ("[A] court may not read into a contract words which the contract does not contain." (citation omitted)). To the contrary, it says that the parties' obligation to go to arbitration "survive[s] the termination of this Agreement," suggesting they expected some arbitrable disputes to arise after it expired.

This interpretation is all the more reasonable given that the arbitration provision covers "dispute[s] . . . relating to . . . the [parties'] relationship."[1] To have any meaning at all, the "relationship" must contemplate something beyond "th[e] Agreement" and the "services performed by Aptive"—the other two categories of arbitrable disputes. *See Am. Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103, 1104 (8th Cir. 1990) ("We construe a contract to give effect to all of its provisions and to avoid rendering any provisions meaningless.").

For VonDeylen, its purpose is to sweep in events during the service period that require continuing contact afterward, like a message about an unpaid bill. The only problem is that a billing dispute like that one would "aris[e] out of or relat[e] to th[e] Agreement" and "services performed . . . under [it]," without ever getting to the parties' "relationship." *See D & S Consulting, Inc. v. Kingdom of Saudi Arabia*, 961 F.3d 1209, 1213 (D.C. Cir. 2020) (concluding that a forum-selection clause covering "disputes . . . related to this *contract*" included claims "concerning unpaid invoices for work performed under the contract" (emphasis added) (citation omitted)). The better reading, in other words, is that, to the extent this dispute is not one relating to the agreement or the services performed by Aptive, it "relat[es] to . . . the relationship" between the parties.

III.

We accordingly reverse and remand with instructions to grant the motion to compel arbitration and stay the proceedings.

_____

---

[1] It is telling that the cases relied upon by VonDeylen lack comparable contractual language. *See Anderson v. Hansen*, 47 F.4th 711, 713–14 (8th Cir. 2022) (addressing an arbitration provision that covered only "dispute[s] arising under or related in any way to this Agreement"); *Zetor*, 861 F.3d at 809 (considering one reaching "controvers[ies] arising out of or relating to this Agreement").

-4-